UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TAMMY S. VILLA,

            Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

            Defendant.

Case No. C17-5460 MJP

**ORDER ON SOCIAL SECURITY APPEAL**

Plaintiff Tammy Sue Villa seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by

1. Improperly rejecting Dr. Heilbrunn's opinions,
2. Improperly rejecting Dr. Dueber's opinion,
3. Improperly rejecting Dr. Wheeler's opinions,
4. Improperly rejecting Dr. Anderson's opinion, and
5. Improperly discrediting Plaintiff's testimony.

Dkt. No. 14. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for an award of benefits under sentence four of 42 U.S.C. § 405(g).

ORDER ON SOCIAL SECURITY APPEAL - 1

## BACKGROUND

Plaintiff is currently 58 years old, has a limited education, and has worked as an in-home caregiver and a grocery store clerk. Tr. 34. On August 20, 2007, Plaintiff applied for benefits, alleging disability as of August 1, 2006. Tr. 99-101 108. Plaintiff's applications were denied initially and on reconsideration. Tr. 53-56, 57-59. After the ALJ (Dethloff) conducted a hearing on December 9, 2009, the ALJ issued a decision finding plaintiff not disabled. Tr. 10-27.

On March 25, 2010, Plaintiff requested administrative review. Tr. 6-7. On August 23, 2010, the Appeals Council declined review, making the ALJ's decision a final decision of the Commissioner appealable to this court. Tr. 1-5.

Plaintiff filed a complaint in this District (s*ee* Tammy Sue Villa v. Michael Astrue, C10-5733-RBL), which resulted in a stipulated remand for further proceedings. Tr. 477-80. The Appeals Council issued an order for a remand hearing on June 27, 2011. Tr. 481-85.

In September 20, 2012, a second ALJ (Kingsley) held a hearing at which Plaintiff, a medical expert and a vocational expert testified. Tr. 424-76. This ALJ also issued a finding that Plaintiff was not disabled. Tr. 393-423. Plaintiff requested a review of that decision (Tr. 392) and, on April 15, 2015, the Appeals Council (after incorporating and considering additional evidence) declined review. Tr. 371-77.

Plaintiff filed a second complaint in District Court (*see* Tammy Sue Villa v. Carolyn Colvin, C15-5373-DWC; Tr. 1292-1302) and, on December 18, 2015, the presiding judge issued an order remanding the case for further proceedings. Tr. 1321-46. Meanwhile, Plaintiff had applied for and been awarded benefits as of December 14, 2015.[1]

On March 9, 2016, the Appeals Council issued an order remanding the matter for a

---

[1] Therefore, this appeal concerns benefits only for the closed period from July 30, 2007 to December 13, 2015.

redetermination of Plaintiff's request for the closed period now at issue. Tr. 1347-51. On January 4, 2017, a third ALJ (Mauer) held a hearing with Plaintiff, her attorney and a vocational expert in attendance. Tr. 1213-41. The ALJ issued her report on April 10, 2017, finding that Plaintiff was not disabled for the closed period at issue. Tr. 1171-1212.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity during the period at issue. Tr. 1177.

**Step two:** Plaintiff has the following severe impairments: Right Shoulder Impingement, Lumbar Spine Degenerative Disc Disease, Migraine Headaches, Depression; and Anxiety. Tr. 1177

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3] Tr. 1178.

**Residual Functional Capacity:** Plaintiff retained the following residual functional capacity (RFC): Lift 20 pounds using both arms only occasionally, 10 pounds frequently; sit, stand, and walk for 6 hours each; sit/stand option twice per hour, but the position changes would not interrupt tasks that can be performed in either position; never reach overhead with the right arm, occasional firm gripping with the right hand; never kneel, crawl or stoop; never climb ladders, ropes or scaffolds; frequently climb ramps and stairs; avoid workplace exposure to inhaled irritants and cold temperatures; no public contact; no teamwork assignments; and essentially R2 reasoning level tasks characterized by

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

common sense, detailed but uninvolved written or oral instructions, a few concrete variables and standardized situations. Tr. 1179-80.

**Step four:** Plaintiff had no past relevant work. Tr. 1199.

**Step five:** The ALJ found that there were a significant number of jobs that Plaintiff could perform in the regional and national economies, as represented by the following: Office Helper (DOT 239.567-010) R2 Light (18,000 jobs nationally); Photocopy Machine Operator (DOT 207.675-014) R2 Light (20,000 jobs nationally); and Agricultural Sorter (DOT 529.687-186) Light SVP 2 (19,000 jobs nationally). As these are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff was found to be not disabled.

Plaintiff timely filed her appeal of that decision to this court. 42 U.S.C. § 405(g).

## DISCUSSION

### Standard of Review

This Court reviews the Commissioner's final decision *de novo* under a "substantial evidence" standard. 42 U.S.C. § 405(g).

### Discussion/Analysis

Plaintiff raises the following issues on appeal:

1. <u>Whether the ALJ provided legally sufficient reasons to reject Dr. Heilbrunn's opinions</u>

Dr. Heilbrunn, M.D., was an examining (as opposed to a treating) physician who examined Plaintiff twice – in February 2012 and September 2015. In the February 2012 exam, he reviewed records and imaging, took Plaintiff's history and conducted his own examination. Tr. 283-90. He diagnosed Plaintiff with the following: Lumbar degenerative disc disease,

positive right straight leg raising; thoracic kyphosis; right shoulder impingement; right hand degenerative joint disease; right knee osteoarthritis; and history of migraine headaches. Tr. 288. His functional assessment noted the following:

> There are objective findings which are in keeping with the claimant's symptoms of lumbar pain, right sided greater. She would have a limitation in sitting: she could be expected to sit for 20 minutes uninterrupted with the weight off the right hip and for a cumulative length of time of 5 out of 8 hours with periods for postural repositioning, correlating to lumbar degenerative joint disease.
> She has left knee osteoarthritis but no decrease in flexion or extension of either knee. Thus she could be expected to stand for at least 20 – 30 minutes uninterrupted, as manifested in the examination, and for a cumulative length of time of 6 out of 8 hours.
> * * *
> The claimant was able to lift and carry, as measured in the examination, 15 pounds with her left hand and 5 pounds with her right hand.

Tr. 288-89.

Dr. Heilbrunn conducted a second exam in September 2015. Tr. 1805-12. At that time, the impairments with which he diagnosed Plaintiff were: Lumbar Degenerative Disease; probable nerve impingement at the root at L5-S1; Chronic COPD [*Chronic Obstructive Pulmonary Disease*]; status/post Bilateral Carpal Tunnel Release with positive current Bilateral Carpal Tunnel Syndrome; Bilateral Knee Osteoarthritis; history of Migraine Headaches; and Overweight. Tr. 1810-11.

His functional assessment of Plaintiff noted the following limitations: lift 0-10 pounds occasionally, with either hand; sit 10-15 minutes at a time (for a total of 3-4 hours out of 8 hours before needing to shift positions); stand/walk 5 minutes at a time, 2-3 hours out of 8 hours; no crouching, kneeling, crawling or stoops; no stairs, ramps, ladders scaffolds, hills or uneven terrain; frequent handling and fingering; frequent above-shoulder reaching; and markedly decreased stamina and shortness of breath with very low levels of activity. Tr. 1812.

ORDER ON SOCIAL SECURITY APPEAL - 5

The ALJ "accord[ed] some weight to Dr. Heilbrunn's opinion." Tr. 1192. There are two flaws in the ALJ's analysis and incorporation of this physician's findings. First, in justifying the degree to which the opinion is discounted, the ALJ makes assumptions and draws conclusions from Heilbrunn's assessment that are not supported by that record nor current medical knowledge. There are several examples of this:

- Heilbrunn's findings of decreased stamina are rejected based on a lack of COPD testing or other objective pulmonary evidence (Tr. 1192), but the relevant sitting, standing, and walking limitations were not based on the pulmonary results/stamina findings but on the physician's findings regarding Plaintiff's lumbar pain, degenerative disc disease, and right leg radiculopathy.[4] Tr. 1812.

- The ALJ questioned Heilbrunn's findings of "limited strength" with no objective reasons and on that basis suggested that Plaintiff had demonstrated a "poor effort." Tr. 1192. But Heilbrunn's strength findings[5] were within normal limits and the doctor made no observations regarding a substandard effort on Plaintiff's part.

- The ALJ again challenges Heilbrunn's results and Plaintiff's motivations with her observation that "the inconsistent straight leg raise findings from seated to supine positioning also speak to less than accurate responses." Tr. 1192. In the first place, Dr. Heilbrunn notes neither inconsistent nor poor effort on Plaintiff's part, nor does

---

[4] The significance of this is that, if Dr. Heilbrunn's sit/stand/walk limitations are credited, Plaintiff would qualify for (at most) sedentary, not light work. SSR 83-10 ("[A] job is in this [light] category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs."). Based on her age and lack of skills, a limitation of sedentary work for Plaintiff would qualify her for a finding of disabled under the Medical Vocational Guidelines. 30 CFR Pt. 404, Subpart P, Appendix 2, Rule 201.12.

[5] Grip strength: 4/5 bilaterally.
Upper extremities strength: 4/5 bilaterally.
Lower extremities strength: 4/5 bilaterally; dorsi/plantar flexion: 5/5
There is no muscle atrophy.
Tr. 1809.

ORDER ON SOCIAL SECURITY APPEAL - 6

he question her responses in his report. Second, the "inconsistent findings" that the ALJ asserts are results from two different kinds of tests; Plaintiff notes a study which "demonstrated that the traditional SLR [*straight leg raising*] test performed in a supine position is more sensitive in reproducing leg pain than the seated SLR test in patients presenting with signs of and symptoms consistent with lumbar radiculopathy." Dkt. No. 26, Reply at 5.[6]

Rejection of an examining physician's findings and opinion requires the ALJ to provide specific and legitimate reasons for doing so. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ characterized Heilbrunn's findings as "remarkable" without specifically identifying which of the findings warranted that label, or why they were "remarkable." This Court does not find the ALJ's findings of "poor" and/or "inconsistent" effort on Plaintiff's part, which are neither supported by Heilbrunn's objective findings nor noted by Heilbrunn himself, supported by "legitimate reasons."

Furthermore, the ALJ cites Heilbrunn's lack of a "treating relationship" with Plaintiff as grounds for the limited weight given his opinion. However, the treating sources on the matter (Dr. Grant, Dr. Dueber, and PAC Finnegan) did not find any fewer limitations than Heilbrunn and all agreed that Plaintiff could not maintain SGA (Tr. 1086-88, 1093-95, 1163, 1907), corroboration which the ALJ fails to mention or account for.

Finally, the ALJ claims that "[t]he degree of limitation described by Dr. Heilbrunn's opinion that is consistent with the overall evidence has been accommodated by the residual functional capacity herein." Tr. 1192. However, the ALJ's findings state that "the RFC herein

---

[6] *The sensitivity of the seated straight-leg raise test compared with the supine straight-leg raise test in patients presenting with magnetic resonance imaging evidence of lumbar nerve root compression,* Rabin, A., *et al.,* Archive of Physical Medical Rehabilitation, July 2007.

includes position changes twice per hour in order to accommodate Dr. Heilbrunn's observation that the claimant had thoracic kyphosis, a mildly antalgic gait, range of motion limitations in her lumbar back and right paraspinal muscle tenderness." Tr. 1190. But Heilbrunn's findings were that Plaintiff could only sit 10-15 minutes before needing to change positions; i.e., <u>four</u> times an hour, not two. The ALJ provides no specific evidence to the contrary justifying her failure to actually accommodate Dr. Heilbrunn's findings and recommended limitation in this regard. The Court finds that the ALJ's reasons for according Dr. Heilbrunn's findings only a limited weight were not legally sufficient.

    2. <u>Whether the ALJ provided legally sufficient reasons to reject Dr. Dueber's opinion</u>

Dr. Dueber, D.O., was one of Plaintiff's treating physicians. On December 23, 2015, Dr. Dueber signed a Proof of Disability Statement required for Plaintiff to receive a property tax deferral from Grays Harbor County. Dr. Dueber checked a box which indicated "I certify that [Ms. Villa] became disabled on _2/2011_ and is unable to engage in any substantial gainful activity. The disability is expected to be permanent," and signed the form. Tr. 1907. The ALJ accorded this opinion "little weight," stating

> As Dr. Dueber did not provide a function-by-function assessment, her statement that the claimant is unable to perform work activities is of limited probative value in assessing the claimant's residual functional capacity during the relevant time period.

Tr. 1193. Plaintiff attacks this as "not legally sufficient," citing <u>Garrison v. Colvin</u> for the proposition that "an opinion based on significant experience with a patient and supported by numerous records is entitled to treating weight." (Dkt. No. 14, Opening Brief at 11.) The footnote cited in <u>Garrison</u> is particularly analogous and instructive:

> [T]he Commissioner suggests that the ALJ was entitled to reject their opinions on the ground that they were reflected in mere check-box forms—e.g., Wang's 2008 PFC Questionnaire and Anderson's 2008 and 2009 Assessments. This argument rests on a mistaken factual premise. The check-box forms did not stand alone: they reflected and were entirely consistent with the hundreds of pages of treatment notes created by Wang and Anderson in the course of their relationship with Garrison.

759 F.3d at 1014, n. 17. As Plaintiff points out, the record was replete with several years' worth of Plaintiff's treatment reports from Dr. Dueber's employer, Beach Clinic.[7] They provide considerable "function-by-function" analysis of Plaintiff's condition and ALJ makes no reference to them, much less explains why they are not being considered.

Plaintiff makes a further argument that is less persuasive; namely that, if the ALJ felt that Dr. Dueber had offered an opinion on the "ultimate issue" of disability by "certify[ing] that Plaintiff became disabled" in February of 2011 – a determination which is reserved to the Commissioner – she had an duty (under SSR 96-5p) to recontact Dr. Dueber for further explanation. But the ALJ makes no reference to Dr. Dueber having usurped the Commissioner's function and the point is not well-taken.

However, the ALJ's failure to accord "treating weight" to Dr. Dueber's opinion, which is backed by significant experience with the claimant and supported by numerous records, was done without legally sufficient justification.

3. <u>Whether the ALJ provided legally sufficient reasons to reject Dr. Wheeler's opinion.</u>

Although not a "treating source," Dr. Wheeler (Ph.D.) examined Plaintiff three times – October 2011, December 2013 and December 2014. Following the October 2011 examination, Dr. Wheeler diagnosed Plaintiff with Major Depression, recurrent, marked; Anxiety NOS; and Borderline Personality Disorder (provisional). She set Plaintiff's GAF (Global Assessment of

---

[7] *See* Tr. 1015-31, 1053-84, 1148-70, 1692-1777, 1827-1909.

Functioning) score at 46 – contrasted to 49 the previous year, with both scores indicating serious impairment in social and occupational functioning. Tr. 680-81. Her assessment of Plaintiff's functional capacity: in addition to her moderate limitations in many areas (learn new tasks, perform routine tasks, etc.), Plaintiff had a marked limitation in her ability to communicate and perform effectively in a work setting with or without public contact. Tr. 681-82.

The December 2013 examination yielded the following diagnosis: Major Depression, chronic, habitual; Anxiety NOS; and Borderline Personality Disorder. Plaintiff's GAF score was noted as 50, still indicating serious impairment in social and occupational functioning. Tr. 1098-99. Plaintiff's "marked" limitations had increased to her ability to communicate effectively, complete a normal workday without interruptions from psychological symptoms, and maintain appropriate behavior. Tr. 1099.

Dr. Wheeler examined Plaintiff for a third and final time in December 2014. Her diagnosis of Plaintiff now included Anxiety NOS, Personality Disorder NOS, and Hoarding, while Plaintiff's GAF remained at 50. Tr. 1144-45. Plaintiff was found to have marked limitations in adaptation, communicating effectively, and maintaining appropriate behavior in a work setting. Tr. 1145.

The ALJ accorded "limited weight" to Dr. Wheeler's first examination because it was the first-time exam of a non-treating professional with no "longitudinal history" with Plaintiff and no indication of what records she had reviewed prior to examining Plaintiff. Tr. 1194. In addition to faulting Wheeler for including "non-work related" factors like Plaintiff's finances, unemployment and poor social support network, the ALJ discounts the GAF score "which explicitly includes an assessment of non-work related functional difficulties including the claimant's unemployment and social support situation." Id.

ORDER ON SOCIAL SECURITY APPEAL - 10

The ALJ's reasons for rejecting the GAF scores (which indicate a serious impairment in social and occupational functioning, certainly relevant to a claimant's ability to sustain SGA) are neither clear nor convincing. As the Ninth Circuit noted in Garrison:

> Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects. *See, e.g., Titles II & XVI: Capability to Do Other Work-Themedical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15, 1985 SSR LEXIS 20, 1983-1991 Soc. Sec. Rep. Serv. 343 (S.S.A 1985) ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.").

759 F.3d at 1002 n.4. In other words, if anything, the GAF scores may be over-optimistic in predicting a subject's ability to function in a work environment.

The ALJ again granted only "limited weight" to Dr. Wheeler's 2013 and 2014 assessments. The Court does not find her reasons for doing so to be legitimate:

- The ALJ noted that "claimant is not following through with recommended health care." Tr. 1195. The Court fails to see how that diminishes the professional's assessment of Plaintiff – the fact that Plaintiff is resistant and sporadic in following up with therapy and other forms of treatment does not mean that the examining source's assessment of the severity of her condition is inaccurate.

  Further, there is case law in the Ninth Circuit that an ALJ is not permitted to "penalize" a mentally-ill claimant for being non-cooperative with treatment. It is part of the pathology of mental illness that a person will fail to cooperate or reasonably assess what's in their best interest. Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)( "'[I]t is a questionable practice to chastise one with a mental impairment

- for the exercise of poor judgment in seeking rehabilitation,' *quoting Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)).

- Dr. Wheeler is not a "treating source." Tr. 1195. Without more, this is not a valid rationale for discounting an opinion. In fact, once again (as with Dr. Heilbrunn), all the "treating sources" (Dr. Grant, Dr. Dueber and PAC Finnegan) corroborated Wheeler's finding that Plaintiff was not capable of sustaining SGA. (*See* Tr. 1086-88, 1093-05, 1163, 1907.) Dr. Wheeler's opinion was backed by clinical results and personal observation which, after the 2015 exam, represented an accumulation of three years' of data and experience.

- "[T]he claimant attended both of these examinations in aid of receiving benefits." Tr. 1195. The ALJ should not be considering the purpose for which an examination is obtained in weighing the credibility of the assessment. To quote Van Nguyen again:

  > [N]one of the factors are present that would allow the ALJ to consider the source of the referral of [the doctor's] patient in assessing the doctor's credibility. [The doctor's] thorough report is based on an examination, a battery of tests, and review of the claimant's hearing testimony. H[ers] is not a mere "unsupported opinion." Nor is there any evidence of any "actual improprieties," *Lester [v. Chater],* 81 F.3d at 832, on [the doctor's] part, such as an inconsistency between h[er] treating notes and the report [s]he submitted to the ALJ or evidence that [s]he was deliberately attempting to mislead the ALJ for the purpose of helping claimant obtain benefits. *See Saelee [v. Chater],* 94 F.3d at 523. To the contrary, [the doctor] repeatedly set forth both the evidence that supported h[er] conclusions and that which undermined them. That does not mean that [the doctor] was correct or that h[er] report must prevail, but it does mean that [the doctor's] credibility is not subject to attack on the basis of the source of h[er] patient's referral.
  >
  > Van Nguyen, 100 F.3d at 1465.

ORDER ON SOCIAL SECURITY APPEAL - 12

Dr. Wheeler's report and her conclusions are supported with clinical observations, a record review, an interview and mental status testing. The ALJ did not provide legally sufficient reasons to accord it "limited weight."

4. <u>Whether the ALJ provided legally sufficient reasons to reject Dr. Anderson's opinion</u>

C. Mark Anderson (Ph.D.) conducted a one-time examination of Plaintiff on November 19, 2015. Tr. 1823-26. Based on that exam, he diagnosed Plaintiff with: Major Depressive Disorder, moderate, recurrent; PTSD; and Cannabis Use Disorder, mild. Tr. 1826. In addition to having flashbacks, startle response and tearfulness consistent with PTSD, he also found that Plaintiff's ability to sustain concentration was compromised and that her memory performance "reflect[ed] a current disability." Id. Dr. Anderson did note (in the "Mental Status" section of his report) that "[t]here was some indication of malingering" and indicated that the "question of malingering… needs to be investigated." Tr. 1824, 1826. He provided no specific examples or observations in support of that possibility, however.

Plaintiff characterizes the ALJ as "rejecting" Dr. Anderson's report, when the ALJ's findings actually indicate that she "accord[ed] limited weight to Dr. Anderson's opinion." Tr. 1195. This is the one instance in which the Court finds the ALJ not only met the criteria for not fully endorsing the opinion of an examining source, but rightly discounted it. She finds his diagnosis of depression in alignment with the "longitudinal record," and the PTSD diagnosis consistent with Plaintiff's subjectively reported symptoms. His assessment that her prognosis was poor due to medical issues was accorded "no weight" for the simple reason that he did not conduct a physical exam (and acknowledges in his report that he only reviewed a single medical report from January of 2015; Tr. 1823). Tr. 1195.

ORDER ON SOCIAL SECURITY APPEAL - 13

Unlike Plaintiff's mischaracterization of the ALJ's response to Dr. Dueber's assessment of Plaintiff's "disability," the ALJ does in fact take exception to Dr. Anderson's "conclusory statements that [Plaintiff] is 'disabled,' which is a finding reserved to the Commissioner." Tr. 1195-96. Under SSR 96-5p, the correct procedure following such a finding is to recontact the examining source for a further explanation, which clearly the ALJ did not do. In the context of the ultimate recommendation (and the overall limited weight which is rightfully accorded to this opinion), the Court finds this is harmless error at worst.

Finally, the ALJ notes Dr. Anderson's "concerns about malingering" as evidence of the examiner's own "doubts about the claimant's presentation and actual functioning." Tr. 1196. Plaintiff cites this as error, focusing on Dr. Anderson's characterization of the issue as a "question… that needs to be investigated" (Tr. 1826), which is not a definitive conclusion. However, the ALJ correctly characterized this aspect of the report by observing that "Dr. Anderson noted concerns about malingering." If he had made a definitive finding of malingering, it would be grounds for rejecting any assessments which credited Plaintiff's subjective reports of her symptoms or the mental examination results; as it is, the ALJ properly incorporated Dr. Anderson's "question" about malingering by assigning limited weight to his findings.

In this instance, the Court finds that the ALJ provided legitimate and specific reasons for according limited weight to this one-time report. The finding does not affect the overall cumulative weight of the evidence favoring a finding of disability.

5. <u>Whether the ALJ provided legally sufficient reasons to discredit Plaintiff</u>

Discrediting a claimant's subjective reports of symptomology, when that testimony is supported by objective medical evidence which could reasonably be expected to produce the

ORDER ON SOCIAL SECURITY APPEAL - 14

alleged symptoms (and there is no evidence of malingering[8]), requires an ALJ to give "specific, clear and convincing reasons for rejecting" the testimony by identifying "which testimony [the ALJ] found not credible" and explaining "which evidence contradicted that testimony." Labourin v. Berryhill, 867 F.3d 1151m 1155 (9th Cir. 2017)(*quoting* Brown-Hunter v. Colvin, 806 F.3d 487, 489, 494 (9th Cir. 2015).

While the ALJ's report devotes most of its time to discrediting Plaintiff's claims of mental disability, it is really Plaintiff's physical limitations which speak most directly to her inability to sustain SGA. Dr. Heilbrunn assessed Plaintiff as needing to change sitting positions 4 times an hour, as unable to sit, stand, or walk for an entire workday without needing to lie down (which the VE said was sufficient by itself to establish her unemployability; Tr. 1236) and, in general, as being limited to a total of 7 hours a day of sitting, standing, or walking (not 8, as required for full-time employment). Tr. 1812. The findings of both of his physical examinations of Plaintiff are consistent, not only with his assessment of her limitations, but with her own reported symptoms,[9] a fact which the ALJ completely overlooks.[10] The ALJ focuses instead on what she characterizes as "her display of evidence of inconsistent performance during examination with Dr. Heilbrunn" (Tr. 1198), an allegation which Heilbrunn makes no mention of whatsoever.

Two fallacious assumptions further undermine the ALJ's assessment of Plaintiff's credibility. The ALJ is clearly of the opinion that Plaintiff "is on high narcotic dosages with no

---

[8] The issue of "malingering" was only raised by Dr. Anderson, and then only as a "question" that merited further investigation. I do not consider this as "evidence" of malingering; the record appears to be devoid of a report from any provider which *documents* malingering on Plaintiff's part.

[9] Which are further corroborated by other objective medical findings: chronic low back pain (Tr. 1118), bilateral carpal tunnel syndrome and chronic headache syndrome (Tr. 1137), and mildly flattening diaphragms consistent with pulmonary hyperinflation (Tr. 1813).

[10] Rather, the ALJ seemed satisfied that Heilbrunn's findings regarding physical limitations had been incorporated into the RFCs when, in fact, they had not (as discussed *supra*).

ORDER ON SOCIAL SECURITY APPEAL - 15

examination findings consistent with a need for such high dosages" and with "nothing in the new objective medical evidence … that would show a need for a high and increasing dosage of methadone." Tr. 1197. Yet the ALJ cites to no such concerns expressed by any of Plaintiff's treatment providers, a clear violation of the Labourin standard. The ALJ's discrediting of Plaintiff based on her medication regime also ignores federal case law holding that the willingness of a physician to prescribe high doses of medication is evidence that the medical professionals believed that claimant's symptoms are real and severe. Scrogham v. Colvin, 765 F.3d 685, 701 (7th Cir. 2014). It is difficult to escape the impression that the ALJ is substituting her decidedly inexpert opinion regarding Plaintiff's medication for that of Plaintiff's doctors. Finally, the ALJ returns to a previous theme of Plaintiff's inconsistent follow-up regarding her mental health treatment to conclude that "this lack of follow-through on treatment recommendations suggests that the claimant's limitations are not as severe as alleged." Tr. 1198. As discussed *supra*, the Ninth Circuit discourages ALJ's from "penalizing" a mentally-ill claimant for being non-cooperative with treatment. Van Nguyen, 100 F.3d at 1465 ("'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation,' *quoting Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)).

The Court finds that the ALJ has not articulated "specific, clear and convincing reasons for rejecting" Plaintiff's testimony.

This case has been remanded twice already. The record is fully developed; there are no outstanding issues, and (since the period of time with which this order is concerned is a closed one) there will be no new developments in Plaintiff's condition.

Under the Social Security Act, the Court is permitted to affirm, modify, or reverse a decision by the Commissioner "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). "Accordingly, every Court of Appeals has recognized that in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014).

Under the "credit-as-true" rule

> where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony [*and, in our case, the testimony of the examining sources*] were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true.

Id. (*quoting* Varney v. Sec'y of Heath & Human Svcs., 859 F.2d 1396, 1401 (9th Cir. 1988). The Court invokes the "credit as true" rule and remands to the Commissioner with instructions to calculate and award benefits for the closed period of time at issue.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for an award of benefits under sentence four of 42 U.S.C. § 405(g)

DATED this __26th__ day of _June_, 2018.

*[signature]*

The Honorable Marsha J. Pechman
United States Senior District Court Judge

ORDER ON SOCIAL SECURITY APPEAL - 17